**EXHIBIT "1"**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

WELLS FARGO BANK, N.A.,
see attached Defendants list.

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

DANIEL L. HOBBS,
LISA A. MILLER-HOBBS,

FILED
Superior Court Of California
Sacramento
08/28/2018
jmora
By_____, Deputy
Case Number:
34-2018-00239683

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>(El nombre y dirección de la corte es): Gordon D. Schaber Courthouse | CASE NUMBER:<br>(Número del Caso): |
|---|---|

Superior Court of the State of California County of SACRAMENTO
720 9TH STREET, SACRAMENTO, CA 95814

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
DANIEL L. HOBBS and LISA A. MILLER-HOBBS    2206 STOCKMAN CIRCLE, FOLSOM, CA 95630

| DATE:<br>(Fecha) AUG 2 8 2018 | Clerk, by _____, Deputy<br>(Secretario) (Adjunto) |
|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

WILMINGTON SAVINGS FUND SOCIETY

3. ☒ on behalf of (specify):

under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☒ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

40101-101518

*Brougham / BSI*

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| HOBBS v. WELLS FARGO BANK, N.A., | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

CLEAR RECON CORP, BSI FINANCIAL SERVICES, WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, and DOES 1 THROUGH 25 INCLUSIVE,

Defendants.



Page _____ of _____

Page 1 of 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

DANIEL L. HOBBS and LISA A. MILLER-HOBBS
2206 STOCKMAN CIRCLE, FOLSOM, CA 95630

TELEPHONE NO.:                     FAX NO.:
ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 720 9TH STREET
MAILING ADDRESS:
CITY AND ZIP CODE: SACRAMENTO, CA 95814
BRANCH NAME: Gordon D. Schaber Sacramento County Courthouse

**FILED**
Superior Court Of California
Sacramento
08/28/2018
jinora
By _____, Deputy
Case Number:
**34-2018-00239683**

JUDGE:
DEPT:

CASE NAME:
HOBBS   v.   WELLS FARGO BANK, N.A., et.al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☑ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve             in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence          f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a.☑ monetary  b.☑ nonmonetary; declaratory or injunctive relief  c.☑ punitive
4. Number of causes of action *(specify)*: 14
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 08-27-18   Lisa A. Miller-Hobbs   ▷ *Lisa A. Miller-Hobbs*
     (TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

1  DANIEL L. HOBBS
   LISA A. MILLER-HOBBS
2  2206 STOCKMAN CIRCLE
   FOLSOM, CA 95630
3
4  PLAINTIFFS IN PRO PER

FILED
Superior Court Of California,
Sacramento

08/28/2018

jmora
By_____, Deputy
Case Number:
**34-2018-00239683**

5

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                      IN AND FOR THE COUNTY OF SACRAMENTO

10

11 DANIEL L. HOBBS,                        )
   LISA A. MILLER-HOBBS,                   )  Case No.
12                                         )  ——————————————
13                    Plaintiffs,          )  COMPLAINT FOR:
                                           )
14                                         )
                                           )   1.  WRONGFUL FORECLOSURE
15 vs.                                     )   2.  CONSTRUCTIVE FRAUD
                                           )   3.  VIOLATIONS OF CALIFORNIA
16                                         )       HOMEOWNERS BILL OF RIGHTS
                                           )   4.  FOR TREBLE DAMAGES
17                                         )   5.  CANCELLATION OF WRITTEN
18 WELLS FARGO BANK, N.A., CLEAR           )       INSTRUMENTS
   RECON CORP, BSI FINANCIAL              )   6.  PREDATORY LENDING
19 SERVICES, WILMINGTON SAVINGS          )       PRACTICES
   FUND SOCIETY DBA CHRISTIANA           )   7.  VIOLATION OF CALIFORNIA
20 TRUST, AS TRUSTEE OF THE              )       B&P CODE § 17200 ET SEQ
   BROUGHAM FUND I TRUST, and DOES 1     )   8.  FRAUD IN THE CONCEALMENT
21 THROUGH 25 INCLUSIVE,                 )   9.  FRAUD IN THE INDUCEMENT
                                         )   10. SLANDER OF TITLE
22                                       )   11. QUIET TITLE
                                         )   12. NEGLIGENCE
23                    Defendants.        )   13. DECLARATORY RELIEF
                                         )   14. INJUNCTIVE RELIEF
24                                       )
                                         )
25                                       )
                                         )
26 ——————————————————————————————————————)

27

28

1    Plaintiffs, DANIEL L. HOBBS and LISA A. MILLER-HOBBS, ("Plaintiffs"), allege as

2    follows:

3                                          I
                         PRELIMINARY ALLEGATIONS
4

5       1.    As of Friday, August 17, 2018 at 12:15pm Plaintiffs contend there was no notice of

6    auction of Plaintiffs' real property.

7       2.   Plaintiffs were on the assumption that auction of Plaintiffs' real property  has been

8    removed from the calendar  and that it has been cancelled.
9

10      3.   Plaintiffs repeated and believed there was no auction scheduled for 8/23/2018 to be

11   worried about they said no there is no pending foreclosure auction on this home

12     4.  Plaintiff contends that, the defendants, and each of them cannot establish rightful

13   possession and proper transfer or proper endorsement of the Promissory Note and the assignment

14   of the Deed of Trust herein. Therefore, the foreclosing defendants do not have the ability to

15   establish that the mortgages that secure the indebtedness, or Note, were legally or properly

16   acquired.
17

18      5.   Further, Plaintiffs allege that, any applicable statutes of limitations have been tolled by

19   the Defendants' continuing, fraud, knowing, and active concealment of the facts alleged herein.

20   Despite exercising reasonable diligence, Plaintiff could not have discovered, did not discover, and

21   was prevented from discovering, the wrongdoing complained of herein until the year 2016.

22      6.  Plaintiffs contend that there has been an unlawful, fraudulent and willful oppressive

23   commencement of a non-judicial foreclosure sale of their real property by above referenced

24   Defendants; as such, Plaintiffs are not required to tender prior to commencing this lawsuit.
25

26      7.  Plaintiffs further allege that, notwithstanding, their Declaration, prior to recording the

27

28

                                          2

1  Notice of Default, neither the Loan Servicer nor the Lender contacted Plaintiffs in person or by

2  telephone to explore options for avoiding foreclosure as mandated by the California Homeowner

3  Bill of Rights and California Civil Code 2923.5.

4      8.  Plaintiffs contend that, Failure to comply with obligations under California Homeowner

5

6  Bill of Rights and California Civil Code 2923.5 forms the gravamen of a cause of action for

7  wrongful foreclosure and to set aside any notice of trustee's sale, and the availability of a private

8  right of action predicated on a violation of section 2923.5.   Please see Ortiz v. Accredited Home

9  Lenders, Inc., 639 F. Supp. 2d 1159, 1166 (S.D. Cal. 2009).

10      9.  Plaintiffs contend that, a homeowner may have a private right of action to enjoin material

11

12  violations and to injunctive relief, which will remain in place as the trustee sale is postponed, until

13  the court has an opportunity to determine if there was any material violation. If the trustee's deed

14  upon sale has already been recorded and the court finds that there is a material violation that has

15  not been corrected, the mortgage servicer may be liable for actual damages. Additionally, if the

16  violation is found in court to have been intentional or reckless, the mortgage servicer may be liable

17  to treble actual damages or $50,000, whichever is greater. The court may also award attorney's

18  fees and costs to the prevailing homeowner. *See Civil Code §2924.12*

19

20      10. Plaintiffs bring this action for declaratory judgment, injunctive and equitable relief, and for

21  compensatory, special, general, punitive damages and treble damages against above named

22  Defendants and each of them.

23                              II.
                       JURISDICTION AND VENUE
24

25      11. The transactions and events which are the subject matter of this Complaint all occurred

26

27  within the County of Sacramento, State of California and the amount in controversy exceeds

28  $25,000.00.

                              3

12. This action arises under California law and venue is proper in this judicial district pursuant to Cal. Civ. Proc. Code §395. Defendants' obligation and liability arise in this County and some of the Defendants reside and/ or conduct business in the State of California.

III.
THE PARTIES

13. Plaintiffs, DANIEL L. HOBBS and LISA A. MILLER-HOBBS, ("Plaintiffs"), are now, and at all times relevant to this action, residents of the County of Sacramento, State of California. Plaintiffs are the rightful owners of the real property commonly describe as: 2206 Stockman Circle, Folsom, CA 95630, ("the subject property").

14. Defendant, WELLS FARGO BANK, N.A., is organized and existing under the laws of United States, and at all relevant times herein, was conducting business in the County of Sacramento, State of California and is the purported an agent and well known representative of the master Servicer and /Lender. Prior to recoding the Notice of Default, Defendant failed to contact Plaintiffs in person or by telephone to explore the option of avoiding foreclosure as mandated by the *California Homeowner Bill of Rights*.

15. Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned in this Complaint, Defendant, CLEAR RECON CORP, is organized and existing under the laws of United States and under the laws of the State of California and at all times pertinent, was conducting business in the County of Sacramento, State of California.   Plaintiff further alleges that, Defendant, is the purported agent of the lender and the loan servicer.  Plaintiff further alleges that, prior to recording of the Notice of Default, Defendant, failed to comply with the express provision of the California Homeowners Bill of Rights California and Civil Code § 2923.5, which provides that the loan servicer, lender, or its agent must contact homeowner in person or by telephone, to discuss option for avoiding foreclosure prior to recording the notice of default.

4

1   Plaintiff alleges that, Defendant failed to contact Plaintiff in person or by telephone to explore

2   option of avoiding foreclosure as mandated by the express requirement of the California

3   Homeowner Bill of Rights and California Civil Code § 2923.5.

4       16. Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned

5   in this Complaint, Defendant, BSI FINANCIAL SERVICES, is organized and existing under the

6

7   laws of United States and under the laws of the State of Texas and at all times pertinent, was

8   conducting business in the County of Sacramento, State of California.   Plaintiff further alleges

9   that, Defendant, is the purported agent of the lender and the loan servicer.  Plaintiff further alleges

10  that, prior to recording of the Notice of Default, Defendant, failed to comply with the express

11  provision of the California Homeowners Bill of Rights California and Civil Code § 2923.5, which

12

13  provides that the loan servicer, lender, or its agent must contact homeowner in person or by

14  telephone, to discuss option for avoiding foreclosure prior to recording the notice of default.

15  Plaintiff alleges that, Defendant failed to contact Plaintiff in person or by telephone to explore

16  option of avoiding foreclosure as mandated by the express requirement of the California

17  Homeowner Bill of Rights and California Civil Code § 2923.5.

18      17. Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned

19  in this Complaint, Defendant, WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA

20  TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, is organized and existing under

21

22  the laws of United States and the laws of the state of Florida; was at all times pertinent, conducting

23  business in the County of Sacramento, State of California.   Plaintiff further alleges that,

24  Defendant, is the purported agent of the lender and the loan servicer.  Plaintiff further alleges that,

25  prior to recording of the Notice of Default, Defendant, failed to comply with the express provision

26  of the California Homeowners Bill of Rights California and Civil Code § 2923.5, which provides

27  that the loan servicer, lender, or its agent must contact homeowner in person or by telephone, to

28

5

1  discuss option for avoiding foreclosure prior to recording the notice of default.    Plaintiff alleges

2  that,  Defendant failed to contact Plaintiff in person or by telephone to explore option of avoiding

3  foreclosure as mandated by the express requirement of the California Homeowner Bill of Rights

4  and California Civil Code § 2923.5.

5

6  18.  Plaintiffs do not know the true names, capacities, or basis for liability of Defendants

7  sued herein as Does 1 through 50, inclusive, as each fictitiously named Defendant is in some

8  manner liable to Plaintiffs, or claims some right, title, or interest in the Property.  Plaintiffs will

9  amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are

10  informed and believe, and therefore allege, that at all relevant times mentioned in this Complaint,

11  each of the fictitiously named Defendants are responsible in some manner for the injuries and

12  damages to Plaintiffs so alleged and that such injuries and damages were proximately caused by

13  such Defendants, and each of them.

14

15
IV.
16
FACTUAL AND GENERAL ALLEGATIONS
17

18  19. Plaintiffs allege that, prior to CLEAR RECON CORP, and BSI FINANCIAL SERVICES

19  recording the Notice of Default, neither the Loan Servicer nor the Lender contacted Plaintiffs in

20  person or by telephone to discuss option of avoiding foreclosure as required by the California

21  Homeowner Bill of Rights.

22  20.  On or about January 03, 2005, (hereinafter referred to as "Closing Date"), Plaintiffs

23  DANIEL L. HOBBS and LISA A. MILLER-HOBBS entered into a consumer credit transaction

24  with, WORLD SAVINGS BANK, FSB, by obtaining a ~~Seven Hundred Four~~ Three hundred seventy-five Thousand dollars *typo*

25  (($US375, 000.00) mortgage loan secured by the DEED OF TRUST of Plaintiffs' real property

26  commonly described as: 2206 Stockman Circle, Folsom, CA 95630 ("the Subject Property").  The

27  true and correct copy of the Deed of Trust is attached hereto as Plaintiffs' **Exhibit "A"** and

28

incorporated herein by reference as if set forth in full herein.   Plaintiffs are informed and believe, and thereon allege that WORLD SAVINGS BANK, FSB is a defunct banking institution. Plaintiffs further allege that, WORLD SAVINGS BANK, FSB did not assign any contractual rights to any of the above named Defendants.   None of the above referenced Defendants is a third party beneficiary under the contract between Plaintiffs and WORLD SAVINGS BANK, FSB which secured Plaintiffs' Note and deed of trust.

21.   Plaintiffs are informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture and enterprise in intrastate and interstate commerce.

22.   On or about 02/03/16, without notice to Plaintiffs, Defendant, WELLS FARGO BANK, N.A., unlawfully substituted CLEAR RECON CORP, as trustee under the deed of trust executed by Plaintiffs.   The true and correct copy of the "SUBSTITUTION OF TRUSTEE" is attached hereto as Plaintiffs' **Exhibit "C"** and incorporated herein by reference as if set forth in full herein.   Plaintiffs allege, that the substitution of trustee is void and has no force and effect. Plaintiffs allege that, CLEAR RECON CORP, is not a duly appointed trustee.

23. Plaintiffs allege that, any applicable statutes of limitations have been tolled by the Defendants' continuing, fraud, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiffs could not have discovered, and did not discover, and was prevented from discovering, the wrongdoing complained of herein.

24.   On or about 02/08/16, Defendant, CLEAR RECON CORP, and BSI FINANCIAL SERVICES, unlawfully recorded the "NOTICE OF DEFAULT AND ELECTION TO SELL UNDER THE DEED OF TRUST" in their zeal to deprive Plaintiff of ALL beneficial interests

7

1   and enjoyment of his real property. (Plaintiff's **Exhibit "C"**). Plaintiff alleges that, in spite of the

2   declaration proffered by the Defendants, prior to recording the notice of default, neither the Loan

3   Servicer not the Lender contacted Plaintiff in person or by telephone to explore options for

4   avoiding foreclosure as mandated by the California Homeowner Bill of Right and the express

5   requirement of California Civil Code 2923.5.   As such, the Notice of Default is void and has no

6   force and effect.

7

8       25.   Plaintiff alleges that Defendants, and each of them, cannot show proper receipt,

9   possession, transfer, negotiations, assignment and ownership of the Plaintiff's original Promissory

10  Note and Deed of Trust, resulting in imperfect security interests and claims.

11      26.   On or about 7/12/16, Defendant, CLEAR RECON CORP, and BSI FINANCIAL

12  SERVICES, unlawfully recorded the "NOTICE OF TRUSTEE'S SALE" in their zeal to deprive

13  Plaintiff of ALL beneficial interests and enjoyment of his real property. (Plaintiff's **Exhibit "D"**).

14  Plaintiff alleges that, the notice of trustee's sale is invalid, and of no force and effect, because

15  CLEAR RECON CORP, is not a duly appointed trustee.   Plaintiff is informed and believes, and

16  thereon alleges that, the notice of default and the notice of trustee's sale are false because each

17

18  fails to accurately depict the amount of Plaintiffs indebtedness if any.

19      27.   Plaintiff further alleges that, the Notice of Default is void because, prior to

20  CLEAR RECON CORP, and BSI FINANCIAL SERVICES recording the Notice of Default,

21

22  neither the Loan Servicer nor the Lender contacted Plaintiff in person or by telephone to discuss

23  option of avoiding foreclosure as required by the California Homeowner Bill of Rights.

24      28.   Plaintiffs also seeks redress from Defendants identified herein for damages, for other

25  injunctive relief, and for cancellation of written instruments based upon: violating California

26  Homeowner Bill of Rights and incomplete and ineffectual perfection of a security interest in

27  Plaintiffs' Home.

28

29. Plaintiffs alleges that an actual controversy has arisen and now exists between the Plaintiffs and Defendants, and each of them. Plaintiffs desire a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

30. Plaintiffs are informed and believe, and thereon allege, that the purchase mortgage on the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiffs in favor of the original lender was not properly assigned and/or transferred to Defendants operating the pooled mortgage funds.

31. Consequently, on or about 02/21/2017, Defendant, WELLS FARGO BANK issued and recorded a purported Corporate Assignment of Deed of Trust, thereafter, transferred and conveyed all beneficial interests under Plaintiffs' Note and deed of trust to WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST. (Plaintiff's **Exhibit "E"**).

32. Plaintiffs allege that, any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiffs could not have discovered, did not discover, and was prevented from discovering, the Assignment of Deed of Trust and the wrongdoing complained of herein until the year 2016. The assignment of the deed recites that, for value received, WELLS FARGO BANK, transfers to WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, under deed of trust executed by Plaintiff on January 03, 2005.

33. Plaintiffs allege that, the corporate assignment of the deed of trust is invalid, and of no force and effect, because WELLS FARGO BANK, does not have standing or the legal authority

to record or cause the purported Corporate Assignment of Deed of Trust under Plaintiffs' Note. Defendant, was not the holder of Plaintiffs' Note in due course. Plaintiffs further alleges that the fraudulent assign of deed of trust served as the basis for a claim to have the right to commence a non-judicial foreclosure of Plaintiffs' real property. Plaintiffs further allege that, WELLS FARGO BANK, was not a party to the contract that secured Plaintiffs' Note and deed of Trust. Furthermore, WELLS FARGO BANK is not a third party beneficiary and do not have any assignment instruments from the lender.   As such, WELLS FARGO BANK cannot lawfully assign any beneficial interest under Plaintiffs' Note and deed of trust.

34. Plaintiffs allege that as of the date of the filing of this Complaint, the Deed of Trust had not been legally assigned to any other party or entity.

35.   Plaintiffs are also informed and believe, and thereon alleges that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the obligation that it secures, is a legal nullity.

36. On or about 03/12/2018, Defendant, CLEAR RECON CORP, unlawfully recorded the "NOTICE OF TRUSTEE'S SALE" in their zeal to deprive Plaintiffs of ALL beneficial interests and enjoyment of her real property. (Plaintiff's **Exhibit "F"**). Plaintiffs alleges that, in spite of the declaration proffered by the Defendants, prior to recording the notice of Trustee's sale, neither the Loan Servicer not the Lender contacted Plaintiff in person or by telephone to explore options for avoiding foreclosure as mandated by the California Homeowner Bill of Right and the express requirement of California Civil Code 2923.5.   As such, the Notice of Trustee's is void and has no force and effect.   Plaintiffs further allege that the Notice of Trustee's Sale of no force and effect in that, CLEAR RECON CORP, is not a duly appointed trustee.

37. Plaintiffs are informed and believes, and thereon alleges, that the Mortgage Originator (i.e., the original lender herein) agreed to transfer and endorse to the Trustee for the Securitized

10

1  Trust, without recourse, including all intervening transfers and assignments, all of its right, title

2  and interest in and to the mortgage loan (Note) of Plaintiffs' herein and all other mortgage loans.

3      38.  Plaintiffs allege that the Defendant Trustees are estopped and precluded from asserting

4  any secured or unsecured claim in this case.

5      39.  Plaintiffs are further informed and believes, and thereon alleges, that as a result of the

6

7  PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor

8  and Depositor are estopped from claiming any interest in the Note that is allegedly secured by the

9  Deed of Trust on Plaintiff's Home herein.

10     40.  Through this action, Plaintiffs seek damages against Defendants, WELLS FARGO

11  BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON

12  SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE

13  BROUGHAM FUND I TRUST, resulting from the unlawful and wrongful encumbering of

14  Plaintiffs' real property and for Treble Damages for Defendants' willful violation of California

15  Homeowner Bill of Rights.

16

17

18                  FIRST CAUSE OF ACTION

19                  (FOR WRONGFUL FORECLOSURE)

20                  (AGAINST ALL DEFENDANTS)

21     41.  Plaintiffs re-allege and incorporates by reference all preceding paragraphs

22  as though fully set forth herein.

23

24     42.  Plaintiffs allege that there has been an illegal, fraudulent or willfully oppressive sale of

25  his real property by the Foreclosing Defendants.

26     43. Plaintiffs are informed and belief, and thereon alleges that Defendants, executed

27  fraudulent real estate documents that touched and concerned Plaintiff's real property and

28

                          11

1  thereafter caused said documents to be recorded in the Official Records in the Office of the Los

2  Angeles County Recorder's office in violation of California laws.

3     44.  Plaintiffs performed all terms, covenants, and conditions required under the mortgage,

4  except for those terms, covenants, and conditions the performance of which was either waived or

5

6  rendered impossible by Defendants, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI

7  FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA

8  CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, and each of

9  them.

10     45. Plaintiff alleges that because there has been an ***illegal, fraudulent or willful oppressive***

11  ***sale*** of his real property, tender is not required.

12  **TENDER IS NOT REQUIRED**

13

14     46. Plaintiff is not required to tender the entire debt as a pre-requisite to maintaining

15  this action.  *Abdallah v. United Savings Bank*, 43 Cal. App. 4th1101, 1109 (1996).

16     47. There is no tender requirement as a pre-requisite for a damages claim for wrongful

17  foreclosure.   In *Munger v. Moore* (1970) 11 Cal. App. 3d 1, 7, the First District observed:

18    **[A]trustee or mortgagee maybe liable to the trustor or mortgagor for damages**

19    **sustained where there has been an illegal, fraudulent or willfully oppressive**
       **sale of property under a power of sale contained in a mortgage or deed of**

20    **trust. This rule of liability is also applicable in California . . . . [citations omitted].**

21     48. Plaintiff alleges that California courts have further clarified that, a trustee or mortgagee

22  may be liable to the trustor or mortgagor for damages sustained where there has been an *illegal,*

23  *fraudulent or willfully oppressive sale* of property under a power of sale contained in a mortgage

24  or deed of trust. *Munger v. Moore*, 11 Cal. App. 3d 1, 7, 89 Cal. Rptr. 323, 326 (Cal. Ct. App.

25

26  1970).

27     49.  Plaintiff alleges that after the origination and funding of their loan, it was sold to investors

28  as a "mortgage backed security" and that none of the Foreclosing Defendants in this action owned

1    this loan, or the corresponding note.

2      50. Plaintiff further alleges that, Defendants, were the agents, employees, servants and/or the

3    joint-venturers of the remaining Defendants, and each of them is liable for unlawfully instituting

4    the Notice of Default and Election To Sell Under Deed of Trust, and The Notice of Trustee Sale

5    and The Trustee's Deed Upon Sale of Plaintiffs' real property in violation of CCP § 2924 (a)(6),

6

7    California Civil Code § 2923.5(a), California Civil Code § 2923.5(g)(2) and the California

8    Homeowner Bill of Rights.

9      51. The above named Defendants lack standing to cause the non-judicial foreclosure of

10    Plaintiff's real property; therefore, the wrongful and unlawful non-judicial foreclosure of

11    Plaintiff's home instituted by the above named Defendants is NULL and VOID.

12

13      52. Plaintiff is informed and believes and thereon alleges that after the origination and

14    funding of his loan, it was sold to investors as a "mortgage backed security" and that none of the

15    foreclosing Defendants in this action owned this loan, or the corresponding note; as such, has no

16    right to cause the non-judicial foreclosure of Plaintiffs' real property

17      53. Plaintiff alleges that Defendants WELLS FARGO BANK, N.A., CLEAR RECON

18    CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA

19    CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, executed

20

21    fraudulent real estate documents pertaining to Plaintiffs' real property and thereafter caused the

22    illegal, fraudulent or willful oppressive sale of property under a power of sale contained in a

23    mortgage or deed of trust.

24      54. Plaintiff is informed and believes, and on that basis alleges that, under the circumstance

25    where there has been illegal, fraudulent or willful oppressive sale of property by the foreclosing

26    defendants, Plaintiff is not required to tender the entire debt before filing this wrongful foreclosure

27    lawsuit.

28

55. Plaintiff is informed and believes and on that basis alleges that, tender is not required in that Plaintiff is also challenging the validity of the underlying debt.

56. Plaintiff is informed and believes, and on that basis alleges that underlying debt's validity and the exercise of the acceleration of debt by Defendants was premature and not authorized.

57. Plaintiff is informed and believes, and on that basis alleges that tender is also not required because, the trustee did not have power to conduct the trustee's sale and the foreclosing Defendants had no standing to cause the foreclosure of Plaintiffs' real property.

58. Plaintiff is informed and believes, and on that basis alleges that the foreclosing Defendants, engaged in a pattern of severe and pervasive wrongful and unlawful non-judicial foreclosure in San Diego County in violation of Homeowner's bill of rights, CCP § 2924 (a)(6) and California Civil Code § 2923.5.

59. Plaintiff is informed and belief, and on that basis alleges that the foreclosing Defendants, were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them are liable to Plaintiff for unlawfully instituting the Assignment of Deed Of Trust, Substitution of Trustee, Notice of Default And Election to Sell, and The Notice Of Trustee Sale of Plaintiff's real property.

60. Plaintiff is informed and belief, and on that basis alleges that, non-judicial foreclosure documents recorded by Defendants are untrue and fabricated and were promulgated through counterfeit securities and/or assignments instruments which were not made available to Plaintiffs.

61. Plaintiff is informed and believes, and on that basis alleges that, non-judicial foreclosure of Plaintiffs' home instituted by the above named Defendants was wrongful and that Defendants acted "intentionally, fraudulently and in conscious and callous disregard for the rights of Plaintiffs and homeowners bill of rights.

14

62. Plaintiff is informed and believes and on that basis alleges that the foreclosing Defendants' conduct violated *California Civil Code* § 2923.5(a), which requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower or person by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. "Section 2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5, including attempt "with due diligence to contact the borrower as required by this section.

63. None of the Defendants assessed Plaintiff's financial situation correctly or in good faith prior to filing the Notices of Default against the Subject Property in this action. Additionally, the declaration was executed on behalf of a corporation that was not in existence at the time of the declaration. Also, the declaration did not satisfy the requirements of *Section 2923.5.*

64. Plaintiff is informed and believes, and on that basis alleges that, the foreclosing Defendants did not fulfill their legal obligation to Plaintiff prior to filing of the Notices of Default and, therefore, any acts based on the Notice of Default taken thereafter were invalid and void.

65. Plaintiff is informed and believes, and on that basis alleges that, the foreclosing Defendants failed to comply with the statute requiring that the notice of default include a "declaration that the mortgagee, beneficiary or authorized agent has contacted the borrower" pursuant to subdivision (a)(2). (Civil Code section 2923.5(b).

66. Plaintiff is informed and believes and thereon alleges that at all times pertinent, Defendants were not authorized by contract or law to proceed with the non-judicial foreclosure of Plaintiffs' real property which Plaintiffs has owned for many years.

67. The assignments by Defendants were fraudulent and wrongful and the deed of trust was not perfected. Therefore, the assignment of the deed of trust has not been perfected.

68. As a result of the above alleged wrongs, Plaintiffs has suffered general and special

15

1  damages in an amount to be determined at trial by the jury.

2

3                              SECOND CAUSE OF ACTION

4

5                              (CONSTRUCTIVE FRAUD)

6                               (Against all Defendants)

7       69.  Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as

8  though fully set forth herein.

9

10      70.  Plaintiffs, are and at all times herein mention is the rightful owner of the subject property

11  located at 2206 Stockman Circle, Folsom, CA 95630.

12      71. Plaintiffs and each of them is, the original Trustor under the Deed of Trust which secured

13  the property and recorded in the official records of Sacramento County, California.

14      72.  Plaintiffs are informed and believe and thereon alleges that Defendants, WELLS FARGO

15  BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON

16  SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE

17  BROUGHAM FUND I TRUST, and each of them claim an interest in the property adverse to

18

19  Plaintiff herein by false misrepresentation.

20      73.  Plaintiffs are informed and believe and thereon alleges that Defendants WELLS FARGO

21  BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON

22  SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE

23  BROUGHAM FUND I TRUST, in conspiracy with, each and all of the DOES Defendants entered

24
   into an agreement of peonage, and through malicious acts, duress, coercion and fraud, and through
25
   promulgating counterfeit securities, with respect to Plaintiff's home in violation of *California law*,
26
27  California Homeowner Bill of rights, violation of CCP § 2924 (a)(6),  California Civil Code 2923

28  (a) (2) and California Civil Code 2923.5 (g) (2) and other foreclosure laws.

                                          16

74.   Plaintiffs are informed and believe and thereon alleges that Defendants, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, are insured pursuance to insurance laws and at least one of the Defendants is a State insured institution and has a duty of candor and a duty to cause harm to individual member of the public.

75.   Plaintiffs are informed and believe and thereon alleges that Defendant breached this duty when it conspired with others implementing fraudulent assignments and securitization schemes to foreclose on Plaintiff's home.

76.   Plaintiffs are informed and believe and thereon alleges that Defendants, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, had a fiduciary relationship with Plaintiff for which they conspired to breach.   (CC § 1573; *Schauer v. Mandarin Gems of Cal. Inc.*, (2005) 125 Cal. App. 4th 949, 961.).

77.   Plaintiffs are informed and believe and thereon alleges that Defendants conspired with each of them and through false misrepresentation, concealment and nondisclosure of assignment instrument in their zeal to induce reliance, justifiable reliance with the co-conspirators to assert fraudulent claim and of Plaintiffs' real property.  All Defendants individually, including DOE Defendants had knowledge of this falsity.

78.   As direct and proximate result of Defendants' illegal foreclosure schemes, Plaintiff has been harm and the extent of Plaintiff's injury will be determined by the jury at trial. (Philipson & Simon v. Gulsvig (2007) 154 Cal.App.4th 347, 363.).

17

## THIRD CAUSE OF ACTION

### (VIOLATIONS OF CALIFORNIA HOMEOWNERS BILL OF RIGHTS)

#### (Against All Defendants)

79.   Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

80.   Plaintiffs allege that, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, alleged agents of the Master Servicers and Lender and the remaining Defendants, (hereinafter "the foreclosing Defendants"), and each of them failed to comply with the express requirements of the Pre-Notice of Default Outreach Requirements mandated by the California Homeowners Bill of Rights.

81.   The California Homeowner Bill of Rights provide in pertinent part that, a servicer may not record a notice of default (NOD) until 30 days after contacting, or diligently attempting to contact, the borrower to discuss alternatives to foreclosure.

82.   Plaintiffs allege that prior to filing the Notice of Default and prior to instituting the non-judicial foreclosure of Plaintiffs' real property, the foreclosing defendants did not contact Plaintiff to discuss alternatives to foreclosure.

83.   Notwithstanding the declaration provided by the Defendant, prior to the recording the Notice of Default under Plaintiffs' real property, neither the Loan Servicer nor the Lender contacted Plaintiff in person or by telephone in order to assess Plaintiff's financial situation and explore options for Plaintiffs to avoid foreclosure as mandated by the express requirement of California Homeowner Bill of Right and the express requirement of the California Civil Code 2923.5.

18

84. Plaintiffs contend that, any trustee's deed upon sale which has already been recorded is a material violation that has not been corrected.

85. Plaintiffs contend that, Civil Code § 2924.12 authorizes actions to enjoin foreclosures, or for damages after foreclosure, for breaches of §§ 2923.55 or 2924.17. This right of private action is "in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law." Civil Code § 2924.12(h). Any Notice of Default, or Substitution of Trustee recorded on Plaintiffs' real property based upon a fraudulent and forged Deed of Trust shall be considered a "Material Violation", thus triggering the injunctive relief provisions of Civil Code § 2924.12 & § 2924.17(a) (b).

86. Plaintiffs allege that the servicer and the foreclosing Defendants did not exercise due diligence to contact Plaintiffs as required under the California Homeowner Bill of Rights.

87. Plaintiffs contend that During the 30 days period prior to Foreclosing Defendants, filing a Notice of Default, Plaintiffs was never contacted in person or by telephone in order to assess his financial situation or to explore options to avoid foreclosure and consider or offer a possible permanent loan modification as mandated by the express requirements of the Pre-Notice of Default Outreach under the California Homeowners Bill of Rights.

88. As a direct and proximate result of the Servicer and the Foreclosing Defendants' failure to comply with the express requirement of the California Homeowners Bill of Rights, Plaintiffs have suffered general and special damages in an amount to be determined at jury trial.

89. As a direct and proximate result of the Servicer and the Foreclosing Defendants' failure to comply with the express requirement of the California Homeowners Bill of Rights, Plaintiff is entitled to treble damages against the foreclosing Defendants and each of them.

## FOURTH CAUSE OF ACTION

### (FOR TREBLE DAMAGES FOR VIOLATIONS OF CALIFORNIA HOMEOWNERS BILL OF RIGHTS)

#### (Against all Defendants)

90. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

91. On or about 02/08/16, Defendant, CLEAR RECON CORP, and BSI FINANCIAL SERVICES, unlawfully recorded the "NOTICE OF DEFAULT AND ELECTION TO SELL UNDER THE DEED OF TRUST" in their zeal to deprive Plaintiff of ALL beneficial interests and enjoyment of his real property. (Plaintiff's **Exhibit "C"**). Plaintiff alleges that, in spite of the declaration proffered by the Defendants, prior to recording the notice of default, neither the Loan Servicer not the Lender contacted Plaintiff in person or by telephone to explore options for avoiding foreclosure as mandated by the California Homeowner Bill of Right and the express requirement of California Civil Code 2923.5. As such, the Notice of Default is void and has no force and effect.

92. Plaintiff alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the Plaintiff's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

93. Plaintiffs allege that, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, alleged agents of the Master Servicers and Lender and the remaining Defendants, (hereinafter "the foreclosing Defendants"), and each of them failed to comply with the express requirements of the Pre-Notice of Default Outreach Requirements mandated by the California Homeowners Bill of Rights.

94. The California Homeowner Bill of Rights provide in pertinent part that, a servicer may not record a notice of default (NOD) until 30 days after contacting, or diligently attempting to contact, the borrower to discuss alternatives to foreclosure.

95. Plaintiff allege that, notwithstanding the declaration provided by the Defendants, prior to the recording the Notice of Default under Plaintiffs' real property, neither the Loan Servicer nor the Lender contacted Plaintiff in person or by telephone in order to assess Plaintiff's financial situation and explore options for Plaintiffs to avoid foreclosure as mandated by the express requirement of California Homeowner Bill of Right and the express requirement of the California Civil Code 2923.5.

96. As a direct and proximate result of Defendants' above-described failures, refusals, and neglect in conducting the purported foreclosure sale of Plaintiff's real property, Plaintiffs are entitled to **Treble Damages** as allowed by law.

97. Furthermore, As a direct and proximate result of Defendants' above-described failures, refusals, and neglect in conducting the purported foreclosure sale of Plaintiff's real property, Plaintiffs have sustained damages in an amount presently unknown, but, upon information and belief, within the jurisdictional limits of this Court. Plaintiffs will either amend this Complaint to set out the amounts of damages sustained when ascertained, or, alternatively, will conform this Complaint to proof at trial.


FIFTH CAUSE OF ACTION

(CANCELLATION OF WRITTEN INSTRUMENTS SOT, NOD, and NTS)

(Against all Defendants)

98. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

21

99. If the wrongfully recorded substitution of trustee (SOT), Notice of Default (NOD), and Notice of trustee's sale (NTS) instruments are left outstanding, Plaintiff will continue to suffer loss and damages. Plaintiff therefore seeks cancellation of the above mentioned recorded instruments.

100.    Plaintiff is informed and believes, and therefore alleges, that WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, acted willfully and with a conscious disregard for Plaintiff's rights and with a specific intent to defraud and injure Plaintiff, by causing the above documents to be prepared and recorded without a factual or legal basis for doing so.

101. On information and belief, these acts by Defendants constitute fraud, oppression and malice under Cal. Civil Code §3294. Defendants acted with a conscious disregard for the requirements to conduct a non-judicial foreclosure sale under Cal. Civil Code 2924 et seq., knowing they had taken a calculated risk that Plaintiff would not contest.

102. By virtue of Defendants' willful and wrongful conduct as herein alleged above, Plaintiff is entitled to general and special damages according to proof at trial, but not less than $1,765,025. 00 as well as punitive and exemplary damages as determined by this Court.


## SIXTH CAUSE OF ACTION

### (PREDATORY LENDING PRACTICES)

### (Against all Defendants)

103.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

22

104.    Plaintiffs are informed and believes, and based thereon alleges that Defendants, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, and each of the Defendants, have collaborated to engage and engaged in predatory lending practices with respect to Plaintiffs in violation Business and Professions Code §17200 and as Predatory Lending as defined in *American Financial Services Assn. v. City of Oakland* (2005)34 Cal.4th 1239.

105.    Plaintiffs are informed and believes, and based thereon alleges that the statutory violations and unlawful actions or practices of Defendants as alleged in this Complaint constitute unlawful business acts and practices within the meaning of California Business and Professions Code § 17200 et seq.

106.    Said unlawful business acts and practices include Defendants' failure to comply with statutory disclosure requirements under the Rosenthal Fair Debt Collection Practices Act.

107.    Plaintiffs  alleges that Defendants' misconduct, as alleged herein, has given them an unfair competitive advantage over their competitors in that, had they complied with their obligations, Plaintiffs and other similarly situated homeowners might have obtained financing from another lender on better and fair terms.

108.    Plaintiffs alleges that as a direct and proximate result of Defendants' actions, they have prospered at Plaintiffs' expense and benefited from collecting mortgage payments and potentially foreclosing on Plaintiffs' property.

109.    Plaintiffs are further informed and believes, and based thereon alleges that Defendants, and each of them, have engaged in additional violations of the aforementioned statutes, the specifics of which are unknown, but which are subject to discovery and with respect to which specifics will be alleged by amendment to this Complaint when ascertained.

23

**WHEREFORE**, Plaintiffs are entitled to equitable relief, including, restitution, and disgorgement of all profits obtained by Defendants by virtue of their misconduct.

## SEVENTH CAUSE OF ACTION

(VIOLATION OF CALIFORNIA B&P CODE § 17200 ET SEQ)

(Against all Defendants)

110. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

111. Plaintiffs are informed and believes and thereon alleges that beginning as early as 2006, and continuing to the present time, Defendants, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, are liable for acts of unfair competition as defined by Business and Professions Code §17200, by engaging in the acts as described above; namely, Defendants' policies and practices described above violate all the statutes as previously listed and California Civil Code §1709, and consequently constitute unlawful business acts or practices within the meaning of Business and Professions Code §17200.

112. In determining whether a business act or practice is unfair, the court weighs the utility of the conduct of Lender and Trustee against the gravity of the harm to the Plaintiff. Trustee and Lender misled Plaintiff and the Department of Corporations by representing to them that there is a loan modification program available to those, like Plaintiff, whose homes are in danger of foreclosure. Trustee and Lender also misled Plaintiff by representing to them that the foreclosure process would be delayed during the loan modification process.

113.      The actions of Defendants, and each of them, in filing the fraudulently Deceptive Notice of Default and without complying with Civil Code Sections 2932.5, 2924, 2923.5 and 2923.6 have misled Plaintiff and similarly situated persons into believing their mortgage is in default and that actual applying for or continuing with the modification process would prevent the foreclosure proceedings. This was done intentionally unfairly and, misleading, and fraudulent. Trustee had no right to file a Notice of Default until complete compliance with Civil Code Section 2932.5, 2923.5, 2923.6 and 2924.

114.      Trustee and Lender had no right to try to sell the Subject Property while there was a tainted, fraudulent Notice of Default.  The harm to Plaintiff and to members of the general public outweighs the utility of the policy and practices of Trustee and Lender consequently constitute an unlawful business act of practice within the meaning of Business and Professions Code §17200.

115.      Further, the foregoing conduct threatens an incipient violation of a consumer law, including or violates the policy or spirit of such law or otherwise significantly threatens or harms competition. Trustee's practices described above are likely to mislead the general public, and therefore, constitute a fraudulent business act of practice within the meaning of Business and Professions Code §17200. The unfair, unlawful, and fraudulent business practices and false and misleading advertising of Trustee and Lender present a continuing threat to members of public in that other consumers will be defrauded into closing on similar fraudulent loans. Plaintiff and other members of the general public have no other adequate remedy of law.

116.      The misrepresentations by Trustee and Lender consisted of failure to disclose and to investigate as described above with intent to induce Plaintiff to obligate themselves on the Loan in reliance on the integrity of Lender.

117.      As an unsophisticated customer, Plaintiffs could not have discovered the true nature of the material facts on their own.

25

118.     The accuracy of the representations of Trustee and Lender is important in enabling consumers such as Plaintiff to compare market lenders in order to make informed decisions regarding lending transactions such as a loan described herein.

119.     Plaintiffs' reliance on Trustee and Lender was a substantial factor in causing the harm Plaintiffs suffered.

120.     Trustee and Lender conspired and agreed to commit the above-mentioned fraud.

121..     As a proximate result of the fraud and non-compliance with state foreclosure laws and the terms of the Deed of Trust by Trustee and Lender Trustee dispossessed Plaintiffs and took Plaintiff's home in a foreclosure sale and caused Plaintiff to suffer injury to credit standing in an amount to be determined at trial.

122.     The conduct of Trustee and Lender was fraudulent within the meaning of California Civil Code §3294(c)(3), and by virtue thereof Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and make an example of Trustee and Lender.

123.     Plaintiffs are unsophisticated customer whose reliance upon Lender and Trustee was reasonable and consistent with the intent of the Legislative, the purpose of California Civil Code §1572, enacted in 1872 and designed to assist and protect consumers similarly situated with Plaintiff in this action.

124.     Plaintiffs allege that as a result Defendants' [supra] violations of *California Business & Professions Code* section 17200, Plaintiff has been damaged in the following ways: (1) multiple parties may seek to enforce his debt obligation against Plaintiff; (2) the title to Plaintiff's real property has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home or get title insurance; (3) Plaintiff is unable to determine whether the monthly mortgage payments has been sent to the right party; (4) Plaintiff's credit and credit score

26

1    have been damaged; and (5) Plaintiff has expended significant funds to cover the cost of this

2    litigation.

3        125.    As a result of the aforementioned acts. Plaintiff has lost money or property and

4    suffered injury in fact. Lender received and continues to hold the money of Plaintiff and other

5    members of the public who have fallen victim to the schemes of Lender and Trustee.

6

7

8                            EIGHTH CAUSE OF ACTION

9                          (FRAUD IN THE CONCEALMENT)

10                            (Against all Defendants)

11       126.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

12   though fully set forth herein.

13       127.    Defendants concealed the fact that the Loans were securitized as well as the terms

14   of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence

15   of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By concealing

16   the securitization, Defendant concealed the fact that Borrower's loan changed in character

17   inasmuch as no single party would hold the Note but rather the Notes would be included in a pool

18   with other notes, split into tranches, and multiple investors would effectively buy shares of the

19   income stream from the loans. Changing the character of the loan in this way had a materially

20   negative effect on Plaintiff that was known by Defendant but not disclosed.

21       128.    Defendants knew or should have known that had the truth been disclosed,

22   Plaintiffs would not have entered into the Loans.

23       129.    Defendants intended to induce Plaintiffs based on these misrepresentations and

24   improper disclosures.

25

26

27

28

                                    27

130.    Plaintiffs' reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiffs could have been alerted to issues of concern.  Plaintiffs would have known of Defendants true intentions and profits from the proposed risky loan. Plaintiffs would have known that the actions of Defendants would have an adverse effect on the value of Plaintiffs' home.

131.    Defendants' failure to disclose the material terms of the transaction induced Plaintiffs to enter into the loans and accept the Services as alleged herein.

132.    Defendants were aware of the misrepresentations and profited from them.

133.    As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiffs' financial security, emotional distress, and Plaintiffs have incurred costs and attorney's fees.

134.    Defendants are guilty of malice, fraud and/or oppression.  Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiffs in that the actions were calculated to injure Plaintiffs.  As such Plaintiffs are entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## NINTH CAUSE OF ACTION

### (FRAUD IN THE INDUCEMENT)

#### (Against all Defendants)

135.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

28

136.     Defendants, intentionally misrepresented to Plaintiffs those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust.  In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

137.     Defendants misrepresented that they are the "holder and owner" of the Note and the beneficiary of the Deed of Trust.  However, this was not true and was a misrepresentation of material fact.  Documents state that the original lender allegedly sold the mortgage loan to WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST.    Plaintiffs allege that, Defendants were attempting to collect on a debt to which they have no legal, equitable, or pecuniary interest in. This type of conduct is outrageous. Defendants are fraudulently foreclosing on the Property which they have no monetary or pecuniary interest. This type of conduct is outrageous.

138.     Defendants' failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans and accept the Services as alleged herein.

139.     The material misrepresentations were made by Defendants with the intent to cause Plaintiff to reasonably rely on the misrepresentation in order to induce the Plaintiffs to rely on the misrepresentations and foreclosure on the Property.  This material misrepresentation was made with the purpose of initiating the securitization process as illustrated above, in order to profit from the sale of the Property by selling the note to sponsors who then pool the note and sell it to investors.

140.     Defendants were aware of the misrepresentations and profited from them.

141.     As a direct and proximate result of the misrepresentations and concealment, Plaintiffs were damaged in an amount to be proven at trial, including but not limited to costs of

29

1  Loan, damage to Plaintiffs' financial security, emotional distress, and Plaintiffs have incurred

2  costs and attorney's fees.

3     142.    Defendants are guilty of malice, fraud and/or oppression.  Defendants' actions

4  were malicious and done willfully in conscious disregard of the rights and safety of Plaintiffs in

5  that the actions were calculated to injure Plaintiffs.   As such Plaintiffs are entitled to recover, in

6  addition to actual damages, punitive damages to punish Defendants and to deter them from

7  engaging in future misconduct.

8

9

10                          TENTH CAUSE OF ACTION

11                             (SLANDER OF TITLE)

12                          (Against all Defendants)

13

14     143.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

15  fully set forth herein.

16     144.    Defendants, and each of them, disparaged Plaintiffs' exclusive valid title by and

17  through the preparing, posting, publishing, and recording of the documents previously described

18  herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, and Trustee's

19  Deed.

20     145.    Said Defendants knew or should have known that such documents were improper

21  in that at the time of the execution and delivery of said documents, Defendants had no right, title,

22  or interest in the Property. These documents were naturally and commonly to be interpreted as

23  denying, disparaging, and casting doubt upon Plaintiffs' legal title to the Property. By posting,

24  publishing, and recording said documents, Defendants' disparagement of Plaintiffs' legal title was

25  made to the public at large.

26

27

28

146.     As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiffs' title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial.

147.     As a further proximate result of Defendants' conduct, Plaintiffs have incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff's title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

148.     As a further direct and proximate result of Defendants' conduct, Plaintiffs have suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to his and her health and well-being, and continues to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial.

149.     At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive them of their exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

150.     The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

### ELEVENTH CAUSE OF ACTION

(QUIET TITLE)

(Against all Defendants)

151.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

152.    All Defendants named herein claim an interest and estate in the property adverse to plaintiffs in that defendants asserts that they are the owner of the note secured by the deed of trust to the property the subject of this suit.

153.    ALL the above named Defendants claims an interest and estate in the property adverse to plaintiffs in that defendants asserts that they are the owner of deed of trust securing the note to the property the subject of this suit.

154.    The claims of all defendants are without any right whatsoever, and defendants have no right, estate, title, lien or interest in or to the property, or any part of the property.

155.    The claim of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to plaintiff's title, and these claims constitute a cloud on plaintiff's title to the property.

156.    Plaintiffs, therefore, allege, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiffs real property.

157.    Plaintiffs request the decree permanently enjoin defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to plaintiff's title to the property.

32

158.    Plaintiffs request the court award the plaintiffs cost of this action, and such other relief as the court may deem proper.

TWELFTH CAUSE OF ACTION
(NEGLIGENCE)
(AGAINST ALL DEFENDANTS)

159.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

160.    At all times relevant herein, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, acting as Plaintiffs' lender and/or loan servicers, had a duty not to Defraud the Plaintiffs and a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, accurate crediting of payments made by Plaintiff.

161.    Plaintiffs allege that, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, and each of them owe duty of care to ensure they do not defraud the Plaintiffs.

162.    Plaintiffs are informed and believes, and on that basis alleges that, in engaging in the conduct alleged above, and in failing to take the actions as alleged above, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, breached their duty of care and skill to Plaintiffs in the servicing

33

of Plaintiffs' loan by, among other things, failing to properly and accurately credit payments made by Plaintiffs toward the loan, preparing and filing false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so.

163.    As a direct and proximate result of the negligence of Defendants, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, as set forth above, Plaintiffs have suffered general and special damages in an amount to be determined at trial.

THIRTEENTH CAUSE OF ACTION

(DECLARATORY RELIEF)

(Against all Defendants)

164.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

165.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties regarding the Note and Trust Deed.

166.    Plaintiffs contend that pursuant to the Loans, Defendants do not have authority to foreclose upon and sell the Property.

167.    Plaintiffs are informed and believes and upon that basis alleges that Defendants dispute Plaintiffs' contention and instead contend they may properly foreclose upon the Property.

168.    Plaintiffs therefore request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

34

169. Plaintiffs request a determination of the validity of the Trust Deeds as of the date the Notes were assigned without a concurrent assignation of the underlying Trust Deeds.

170. Plaintiffs request a determination of the validity of the NOD (Notice of Default).

171. Plaintiffs request a determination of whether any Defendants have authority to foreclose on the Property.

172. Plaintiffs request all adverse claims to the real property must be determined by a decree of this court.

173. Plaintiffs request the decree declare and adjudge that plaintiff is entitled to the exclusive possession of the property.

174. Plaintiffs request the decree declare and adjudge that plaintiffs owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

175. Plaintiffs request the decree declare and adjudge that defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## FOURTEENTH CAUSE OF ACTION

(INJUNCTIVE RELIEF)

(Against all Defendants)

176. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

177. An actual controversy has arisen and now exists between Plaintiff sand Defendants concerning their respective rights and duties regarding the Note and Trust Deed.

178. Plaintiffs contends that pursuant to the mortgage loans and the Deed of Trust, Defendants, do not have authority to foreclose upon and/or sell Plaintiffs' real properties described

35

1   above.

2   179.    Plaintiffs allege that, in addition to violating the California Homeowner Bill of Rights,

3   Defendants knowingly concealed their lack of an enforceable security interests in plaintiffs' real

4   properties by fabricating and recording false documents in the Sacramento County Recorder's

5   Office.

6

7   180.    Plaintiffs brings this action for preliminary injunction against Defendants, WELLS

8   FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and

9   WILMINGTON SAVINGS FUND SOCIETY DBA CHRISTIANA TRUST, AS TRUSTEE OF

10  THE BROUGHAM FUND I TRUST, and their agents, officers, employees, and affiliates or

11  associated parties  for their and their predecessors' actions in engaging in a pattern of unlawful,

12  fraudulent, and unfair predatory real estate practices causing Plaintiffs to become victims of such

13  behavior and to be in jeopardy of losing their real property through unlawful non- judicial

14  foreclosure.

15

16  181.    Plaintiffs have clear legal rights to seek temporary and permanent injunctive relief as

17  Plaintiffs have legal rights to their real property and as Defendants are without any satisfying and

18  necessary legal standing to institute a foreclosure, are seeking, to take possession, custody, and

19  control of Plaintiffs' real property and ultimately remove the Plaintiffs from their home/real

20  property.

21

22  182.    Plaintiffs have no adequate remedy at law to redress the harm complained of, and the

23  sale of the Plaintiff's property, under the circumstances of record, is contrary to equity and good

24  conscience in that such sale is being instituted by Defendants who have no legal standing to

25  institute or maintain the non-judicial foreclosure.

26  183.    The specific facts set forth in this Complaint demonstrates that unless an injunctive

27  relief temporary is granted against Defendants from removing Plaintiffs from their real properties

28

during the pendency of this lawsuit, Plaintiffs will suffer irreparable injury, loss, and damage of her real properties and eviction therefrom.   The threatened injury to Plaintiff's properties and personal rights cannot be compensated for by an ordinary damage award in that Plaintiffs real properties are unique.

184.    Under the circumstances where the unlawful non-judicial foreclosure sale has occurred and Defendants are threatening to remove Plaintiffs from their property, irreparable loss to Plaintiffs will result if the Injunctive Relief requested herein is not granted immediately.

185.    As Defendants has no legal standing to institute or maintain a foreclosure of the Property, there is no harm to said Defendant with the granting of the requested relief, and any claimed harm is substantially outweighed by the irreparable harm to the Plaintiffs if the relief requested herein is not granted.

186.    The granting of the relief requested herein is in the public interest, as the consuming public, including Plaintiffs, will continue to be harmed by the illegal and unlawful conduct of the Defendants if the relief requested herein is not granted.

187.    Under the circumstances where there is no harm to Defendant with the granting of the requested relief, no bond should be required as a prerequisite to the granting of the relief requested herein as there are no costs or other damages which could be contemplated on the part of Defendants with the granting of the requested relief for which a bond would otherwise be necessary.

**WHEREFORE,** Plaintiffs respectfully request that this Court immediately take jurisdiction of this matter and enter an Order granting temporary and permanent injunctive relief expressly precluding Defendants, WELLS FARGO BANK, N.A., CLEAR RECON CORP, BSI FINANCIAL SERVICES, and WILMINGTON SAVINGS FUND SOCIETY DBA

1  CHRISTIANA TRUST, AS TRUSTEE OF THE BROUGHAM FUND I TRUST, and their agents

2  and assigns, from enforcing the non-judicial foreclosure and from removing Plaintiffs from their

3  real property during the pendency of this action.

4

5  **DEMAND FOR JURY TRIAL**

6  **WHEREFORE**, Plaintiffs request for Jury Trial on all causes of action.

7

8  **<u>PRAYER FOR RELIEF</u>**

9

10  **WHEREFORE**, Plaintiff, ask for the following for each Cause of Action to be awarded:

11      (a)  For Treble Damages for Violation of California Homeowner Bill of Rights
    (b)  For Special Damages in an amount to be determined by proof at trial;

12      (c)  For Compensatory Damages in an amount to be determined by proof at trial;
    (d)  For Punitive Damages as allowed by law;

13      (e)  For Restitution as allowed by law;
    (f)  For Declaratory Relief and Injunctive Relief,

14      (g)  For Injunctive Relief;

15      (h)  For an order compelling Defendants to remove any instrument, including the
        Assignment of Deed of Trust, which does or could be construed as constituting

16          a cloud upon Plaintiffs' title to the subject Property;

17      (i)  For an order compelling Defendants to disgorge all amounts wrongfully taken
        from Plaintiff and returning the same to Plaintiff's interest thereon at the
        statutory rate from the date the funds were first received from Plaintiff

18      (j)  For Attorney's Fees and Costs of this action;.

19      (k)  For costs of suit incurred herein; and
    (l)  For such and further relief as the Court may deem just and proper.

20

21

22  Dated:  08-27-18           Dated:  08-27-18

23

24

25

26  _____      _____
DANIEL L. HOBBS         LISA A. MILLER-HOBBS

27  Plaintiff In Pro Per         Plaintiff In Pro Per

28

# EXHIBIT A

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

Sacramento County Recording
Mark Norris, Clerk/Recorder
BOOK 20050107 PAGE 1219
Friday, JAN 07, 2005 12:39:09 PM
Ttl Pd  $57.00  Nbr-0003305326

SLT/22/1-17

LOAN NUMBER:  0027683424

NOTE AMOUNT:  $375,000.00

Alliance Title 12301761·814·KBM          FOR RECORDER'S USE ONLY

### DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS
PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND
AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES
AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE
RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF
TRUST IS  $468,750.00 WHICH IS  125% OF THE ORIGINAL PRINCIPAL
NOTE AMOUNT.

---

I.   DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
     (A)   Security Instrument. This Deed of Trust, which is dated  JANUARY 03, 2005
" * " will be called the "Security Instrument"

     (B)   Borrower. DANIEL L. HOBBS AND LISA A. MILLER-HOBBS, HUSBAND
AND WIFE

sometimes will be called "Borrower" and sometimes simply "I" or "me."

     (C)   Lender. WORLD SAVINGS BANK, FSB, * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * " ITS SUCCESSORS AND/OR
ASSIGNEES, will be called "Lender." Lender is  A FEDERAL SAVINGS BANK * * * *
* * * * *   which is organized and exists under the laws of the United States. Lender's
address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA  94612.

SD001A (03.22.02/4-02) A01A          Page 1          CA
DEFERRED INTEREST          DEED OF TRUST-ADJUSTABLE

LENDER'S USE ONLY

0027683424

(D)    Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $375,000.00 * * ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in monthly payments and to pay the debt in full by JANUARY 15, 2035.

(E)    Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F)    Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G)    Person. Any person, organization, governmental authority or other party will be called "Person."

(H)    Trustor, Beneficiary, Trustee. Borrower is the "Trustor," Lender is the "Beneficiary" and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION * * * * * * * is the "Trustee.

II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY
I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.    DESCRIPTION OF THE PROPERTY
I give Trustee rights in the Property described below:

(i)    The property which is located at 2206 STOCKMAN CIRCLE, FOLSOM, CA 95630. * * * * * * * * * * * * * * * * * * * * * * * * * * The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

0027683424

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

**IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

**1.    BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.    PAYMENTS FOR TAXES AND INSURANCE**
**(A)    Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

0027683424

**(B)   Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. s 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

0027683424

### 3.    APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

### 4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered

0027683424

by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

0027683424

6. **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7. **LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8. **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9. **AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if

0027683424

only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**
**(A)    Borrower's Obligations**
Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)    Lender's Rights**
Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**
Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made

0027683424

in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 2206 STOCKMAN CIRCLE, FOLSOM, CA 95630. * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the

**0027683424**

tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

0027683424

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B)    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the monthly payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

0027683424

**25.   FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.   SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

0027683424

**28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**
It will be called a "Breach of Duty" if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.   RECONVEYANCE**
Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.   STATEMENT OF OBLIGATION**
Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

' 0027683424

**31.    ( X )  QUICK QUALIFYING LOAN PROGRAM**
I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )  OWNER OCCUPANCY**
Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that:    (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.


**( X )  VALUE INDICATES THAT THE PARAGRAPH APPLIES.**




**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

0027683424

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

BORROWER(S):

_____ (Seal)
DANIEL L. HOBBS

_____ (Seal)
LISA A. MILLER-HOBBS

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

**ATTACH INDIVIDUAL  NOTARY ACKNOWLEDGEMENT**

SD00101 (03.22.02/4-02) A01P           DEED OF TRUST-ADJUSTABLE           CA
                                       PAGE 15 OF 15

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

State of. _California_

County of _Sacramento_

On _Jan 3, 2005_ before me, _Ernesto Andres Marlan_
<span style="font-size:small">Name and Title of Officer (e.g., "Jane Doe, Notary Public")</span>

personally appeared _Daniel L. Hobbs and Lisa A. Miller - Hobbs_
<span style="font-size:small">Name(s) of Signer(s)</span>

☐ personally known to me -OR- ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

[Notary Seal: ERNESTO ANDRES MARLAN, COMM. #1508485, Notary Public-California, SACRAMENTO COUNTY, My Comm. Exp. Aug 17, 2008]

WITNESS my hand and official seal.

_____
Signature of Notary Public

----------------------------------OPTIONAL----------------------------------
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____

☐ Individual
☐ Corporate Officer
☐ Titles(s): _____
☐ Partner - ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

[RIGHT THUMBPRINT OF SIGNER — Top of Thumb here]

Signer Is Representing: _____

_____

Signer's Name: _____

☐ Individual
☐ Corporate Officer
☐ Title(s): _____
☐ Partner - ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

[RIGHT THUMBPRINT OF SIGNER — Top of Thumb here]

Signer Is Representing: _____

Page No. 6
File No. 12301761-814- KB1

## SCHEDULE C
## LEGAL DESCRIPTION

All that certain real property situate in the City of Folsom, County of Sacramento, State of California, described as follows:

Lot 7, as shown on the Empire Ranch – Village No. 38, PN 99-643-10, filed for record January 10, 2003, in Book 309 of Maps, at Page 9, Sacramento County Records.

APN No:  072-2250-007-0000

# EXHIBIT B

Recording requested by:
Clear Recon Corp.

When Recorded Mail To:
Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117

**Sacramento County Recorder**
**Donna Allred, Clerk/Recorder**
BOOK 20160210 PAGE 1300
**Acct 1003-SIMPLIFILE**
**Wednesday, FEB 10, 2016  3:23:20 PM**
**Ttl Pd    $21.00      Nbr-0008959473**
**NND/89/1-1**

---

Trustee Sale Number: 038963-CA
APN: 072-2250-007-0000
Property Address: **2206 STOCKMAN CIRCLE, FOLSOM, CA 95630**

Space above this line for Recorder's use only

### SUBSTITUTION OF TRUSTEE

WHEREAS, **DANIEL L. HOBBS AND LISA A. MILLER-HOBBS, HUSBAND AND WIFE** was the original Trustor, **GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION** was the original Trustee, and **WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES** was the original Beneficiary, under that certain Deed of Trust dated **1/3/2005** and recorded on **1/7/2005**, in Book **20050107**, Page **1219**, of official records of Sacramento County, California; and WHEREAS, the undersigned is the present Beneficiary ("Beneficiary") under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under the said Deed of Trust in place and stead of said present Trustee. NOW, THEREFORE, the Beneficiary hereby substitutes, **CLEAR RECON CORP.**, whose address is: **4375 Jutland Drive Suite 200, San Diego, California 92117**, as Trustee so long as in accordance with the Deed of Trust and applicable law. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: _2/3/16_

Wells Fargo Bank, N.A.

By Andrea Whitney, of the firm Aldridge Pite, LLP as its attorney in fact

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of _____CALIFORNIA_____ )
County of ___SAN DIEGO___ )

On __FEB 0 3 2016__, before me __Silver De Vera__, Notary Public, personally appeared _____ANDREA WHITNEY_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __CALIFORNIA__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
**Silver De Vera**

OFFICIAL SEAL
SILVER DE VERA
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 2110957
SAN DIEGO COUNTY
MY COMM. EXP. MAY 10, 2019

003-CA-V5

TS No.: 038963-CA

# EXHIBIT C

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117

**Sacramento County Recorder**
**Donna Allred, Clerk/Recorder**
BOOK 20160210 PAGE 1301
**Acct 1003-SIMPLIFILE**
**Wednesday, FEB 10, 2016 3:23:20 PM**
**Ttl Pd   $30.00     Nbr-0008959474**
**NND/89/1-4**

T.S. No.: 038963-CA
APN: 072-2250-007-0000                          SPACE ABOVE THIS LINE FOR RECORDER'S USE
**Property Address: 2206 STOCKMAN CIRCLE,**          Title Order No.: 160024144-CA-VOI
**FOLSOM, CA 95630**

# NOTICE OF DEFAULT

Pursuant to CA Civil Code 2923.3
**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,**
and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$12,477.83** as of 2/8/2016, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though

CRC NOD 09122014

Trustee Sale No.: **038963-CA**  Title Order No.: **160024144-CA-VOI**

full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Wells Fargo Bank, N.A.
C/O Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117
Phone: 858-750-7600

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  CLEAR RECON CORP. is either the original trustee, the duly appointed substituted trustee or the designated agent of the holder of the beneficial interest under a deed of trust dated 1/3/2005, executed by  DANIEL L. HOBBS AND LISA A. MILLER-HOBBS, HUSBAND AND WIFE, as Trustor, to secure certain obligations in favor of the beneficiary thereunder,  recorded 1/7/2005, in Book 20050107, Page 1219, of Official Records in the Office of the Recorder of Sacramento County, California, encumbering the land as fully described on said Deed of Trust

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 9/15/2015 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

CRC NOD 09122014

Trustee Sale No.: **038963-CA**  Title Order No.: **160024144-CA-VOI**

That by reason thereof, Wells Fargo Bank, N.A., the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

CLEAR RECON CORP.

Date Executed: **FEB 0 8 2016**     BY: _____

BERNIS M. GONYEA     , Authorized Signatory for Trustee

**CLEAR RECON CORP.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**

Page 3 of 3

CRC NOD 09122014

# EXHIBIT D

**Sacramento County Recorder**
**Donna Allred, Clerk/Recorder**
BOOK 20160718 PAGE 1039
**Acct 1003-SIMPLIFILE**
**Monday, JUL 18, 2016  2:10:19 PM**
**Ttl Pd    $24.00        Nbr-0009157848**
**JER/53/1-2**

RECORDING REQUESTED BY
And When Recorded Mail To:

**CLEAR RECON CORP.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**
**Phone: 866-931-0036**

T.S. No. 038963-CA
APN: 072-2250-007-0000

Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

### Pursuant to CA Civil Code 2923.3
### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 1/3/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER

On 8/11/2016 at 1:30 PM, CLEAR RECON CORP., as duly appointed trustee under and pursuant to Deed of Trust recorded 1/7/2005, in Book 20050107, Page 1219, of Official Records in the office of the County Recorder of Sacramento County, State of CALIFORNIA executed by:

**DANIEL L. HOBBS AND LISA A. MILLER-HOBBS, HUSBAND AND WIFE**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

**AT THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 720 9TH ST., SACRAMENTO, CA 95814**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as:

**MORE FULLY DESCRIBED ON SAID DEED OF TRUST**

The street address and other common designation, if any, of the real property described above is purported to be:
**2206 STOCKMAN CIRCLE**
**FOLSOM, CA 95630**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to

CRC NOS 012914

T.S. No. 038963-CA

## NOTICE OF TRUSTEE'S SALE

pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$384,219.30**

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (844) 477-7869 or visit this Internet Web site WWW.STOXPOSTING.COM, using the file number assigned to this case 038963-CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

**FOR SALES INFORMATION: (844) 477-7869**

Date Executed: 7/12/16

CLEAR RECON CORP.

,Authorized Signature

Monica Chavez
CLEAR RECON CORP.
4375 Jutland Drive Suite 200
San Diego, California 92117

CRC NOS 012914

# EXHIBIT E

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN  55121-4400

**Sacramento County Recorder**
**Donna Allred, Clerk/Recorder**
BOOK 20170222 PAGE 1198
**Acct 1002-INGEO**
**Wednesday, FEB 22, 2017  1:01:34 PM**
**Ttl Pd   $21.00      Nbr-0009446742**
**JLW/14/1-1**

CORPORATE ASSIGNMENT OF DEED OF TRUST

Sacramento, California
"HOBBS"

PREPARED BY: WELLS FARGO BANK, N.A.

For Value Received, WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB hereby grants, assigns and transfers to WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE BROUGHAM FUND I TRUST at 13266 BYRD STREET, #447, ODESSA, FL  33556 all its interest under that certain Deed of Trust dated 01/03/2005 , in the amount of $375,000.00, executed by DANIEL L. HOBBS AND LISA A. MILLER-HOBBS, HUSBAND AND WIFE to WORLD SAVINGS BANK, FSB and Recorded:  01/07/2005  in Book/Reel/Liber: 20050107 Page/Folio: 1219 in the County of Sacramento, State of California.

In witness whereof this instrument is executed.

WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB
On _02/21/2017_

_____
George Edward Wellock
Vice President Loan Documentation

STATE OF Minnesota
COUNTY OF Dakota

On 2-21-2017 , before me, ___Jay Kenneth Sandahl_____, a Notary Public in the State of Minnesota , personally appeared ____George Edward Wellock_____, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Jay Kenneth Sandahl
Notary Expires: 01/31/19

JAY KENNETH SANDAHL
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/19

(This area for notarial seal)

*BB4*BB4WFEM*02/15/2017 12:24:47 PM* WFEM02WFEMA00000600000000001535245* CASACRA* CASTATE_TRUST_ASSIGN_ASSN **GEWWFEM*

# EXHIBIT F



RECORDING REQUESTED BY
And When Recorded Mail To:

**CLEAR RECON CORP.**
**4375 Jutland Drive**
**San Diego, California 92117**
**Phone: 866-931-0036**

T.S. No. 038963-CA
APN: 072-2250-007-0000

Sacramento County
Donna Allred, Clerk/Recorder
Doc # **201803141302**

| 3/14/2018 | 3:05:52 PM | Fees | $98.00 |
| SJS | Electronic | Taxes | $0.00 |
| Titles | 1 | PCOR | $0.00 |
| Pages | 2 | Paid | $98.00 |

Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

### Pursuant to CA Civil Code 2923.3
### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 1/3/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 4/19/2018 at 1:30 PM, CLEAR RECON CORP., as duly appointed trustee under and pursuant to Deed of Trust recorded 1/7/2005, in Book 20050107, Page 1219, of Official Records in the office of the County Recorder of Sacramento County, State of CALIFORNIA executed by:

**DANIEL L. HOBBS AND LISA A. MILLER-HOBBS, HUSBAND AND WIFE**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

**OUTSIDE THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 720 9TH ST., SACRAMENTO, CA 95814**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as:

**MORE FULLY DESCRIBED ON SAID DEED OF TRUST**

The street address and other common designation, if any, of the real property described above is purported to be:
**2206 STOCKMAN CIRCLE**
**FOLSOM, CA 95630**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to

Page 1 of 2

CRC NOS 012914

T.S. No. 038963-CA

## NOTICE OF TRUSTEE'S SALE

pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$405,139.12**

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (844) 477-7869 or visit this Internet Web site WWW.STOXPOSTING.COM, using the file number assigned to this case 038963-CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR SALES INFORMATION: (844) 477-7869

Date Executed: **MAR 1 2 2018**

CLEAR RECON CORP.

TAMMY LAIRD                    ,Authorized Signature
FORECLOSURE MANAGER
CLEAR RECON CORP.
4375 Jutland Drive
San Diego, California 92117

Page 2 of 2

CRC NOS 012914

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLS FARGO BANK, N.A.,
see attached Defendants list.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DANIEL L. HOBBS,
LISA A. MILLER-HOBBS,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

FILED
Superior Court Of California
Sacramento

08/28/2018

jmora

By _____ , Deputy

Case Number:
34-2018-00239683

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Gordon D. Schaber Courthouse | CASE NUMBER:<br>*(Número del Caso):* |
|---|---|

Superior Court of the State of California County of SACRAMENTO
720 9TH STREET, SACRAMENTO, CA 95814

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
DANIEL L. HOBBS and LISA A. MILLER-HOBBS      2206 STOCKMAN CIRCLE, FOLSOM, CA 95630

| DATE:<br>*(Fecha)*   AUG 2 8 2018 | Clerk, by<br>*(Secretario)* _____ | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*     WILMINGTON SAVINGS FUND SOCIETY

under:  ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
        ☒ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**EXHIBIT "2"**



F

## State of California
### Secretary of State

### Statement of Information
(Foreign Corporation)
FEES (Filing and Disclosure): $25.00.
If this is an amendment, see instructions.
IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM

**F655984**

## FILED
In the office of the Secretary of State
of the State of California

**JUN-10 2015**

| 1. CORPORATE NAME |
|---|
| SERVIS ONE, INC. |

| 2. CALIFORNIA CORPORATE NUMBER | C2891083 |
|---|---|

This Space for Filing Use Only

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. If there have been any changes to the information contained in the last Statement of Information filed with the **California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 13.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | | |
| 1425 GREENWAY DRIVE, SUITE 400, IRVING, TX 75038 | | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | | |
| 6. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 4 | | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ | | | | |
| GAGAN SHARMA     1425 GREENWAY DRIVE, SUITE 400, IRVING, TX 75038 | | | | |
| 8. SECRETARY | | | | |
| JORDAN DORCHUCK     1425 GREENWAY DRIVE, SUITE 400, IRVING, TX 75038 | | | | |
| 9. CHIEF FINANCIAL OFFICER/ | | | | |
| GAGAN SHARMA     1425 GREENWAY DRIVE, SUITE 400, IRVING, TX 75038 | | | | |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 11 must be left blank.

| 10. NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| INCORP SERVICES, INC |

| 11. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|

**Type of Business**

| 12. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION |
|---|
| SUBSERVICING OF MORTGAGE LOANS |

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| 06/10/2015 | JILL JOHNSON-SHEELY | SVP | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-350 (REV 01/2013) | APPROVED BY SECRETARY OF STATE |
|---|---|

2891083

FILED
in the office of the Secretary of State
of the State of California

JUL 2 8 2006

# STATEMENT AND DESIGNATION
# BY FOREIGN CORPORATION

SERVIS ONE, INC
_____
(Name of Corporation)

_____ , a corporation organized and existing under the

laws of DELAWARE _____ ,makes the following statements and designation:
        (State or Place of Incorporation)

1. The address of its principal executive office is **9901 E Valley Ranch Pkwy, Suite 2000**

   **Irving, TX  75063**

2. The address of its principal office in the State of California is _____

   _____

## DESIGNATION OF AGENT FOR SERVICE OF PROCESS IN THE STATE OF CALIFORNIA
### (Complete either Item 3 or Item 4 )

3. (Use this paragraph if the process **agent is a natural person**.)

   _____ ,a natural person residing in the State of

   California, whose complete address is _____

   _____ , is designated as agent upon whom process directed to
   this corporation may be served within the State of California, in the manner provided by law.

4. (Use this paragraph if the process **agent is a corporation**.)
   Corporation Service Company which will do business in California as
   CSC-Lawyers Incorporating Service _____ , a corporation organized and existing

   under the laws of Delaware _____ , is designated as agent upon whom process directed
   to this corporation may be served within the State of California, in the manner provided by law.

   **NOTE:  Corporate agents must have complied with California Corporations Code Section 1505
   prior to designation.**

5. It irrevocably consents to service of process directed to it upon the agent designated above, and to service
   of process on the Secretary of State of the State of California if the agent so designated or the agent's
   successor is no longer authorized to act or cannot be found at the address given.

_____          **Gagan Sharma, President/CEO**
   (Signature of Corporate Officer)          (Typed Name and Title of Officer Signing)

*Secretary of State Form*
*S&DC-STOCK/NONPROFIT (REV 03/2005)*

# Delaware

PAGE 1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "SERVIS ONE, INC." IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-SEVENTH DAY OF JULY, A.D. 2006.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "SERVIS ONE, INC." WAS INCORPORATED ON THE TENTH DAY OF NOVEMBER, A.D. 2004.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE BEEN PAID TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE BEEN FILED TO DATE.



_Harriet Smith Windsor_
Harriet Smith Windsor, Secretary of State

3879813  8300

060707859

AUTHENTICATION: 4932195

DATE: 07-27-06

**EXHIBIT "3"**

Delaware.gov                                    Governor | General Assembly | Courts | Elected Officials | State Agencies

---

**Department of State: Division of Corporations**

Allowable Characters

| HOME | | Entity Details | | |
|------|---|---|---|---|
| About Agency | | | | |
| Secretary's Letter | | THIS IS NOT A STATEMENT OF GOOD STANDING | | |
| Newsroom | | | | |
| Frequent Questions | | | | |
| Related Links | File Number: | **3902** | Incorporation Date / | **1/11/1900** |
| Contact Us | | | Formation Date: | (mm/dd/yyyy) |
| Office Location | | | | |
| **SERVICES** | Entity Name: | **WILMINGTON SAVINGS FUND SOCIETY** | | |
| Pay Taxes | | | | |
| File UCC's | Entity Kind: | **Corporation** | Entity Type: | **Non Title 8** |
| Delaware Laws Online | | | | |
| Name Reservation | Residency: | **Domestic** | State: | **DELAWARE** |
| Entity Search | | | | |
| Status | REGISTERED AGENT INFORMATION | | | |
| Validate Certificate | | | | |
| Customer Service Survey | Name: | **WILMINGTON SAVINGS FUND SOCIETY** | | |
| **INFORMATION** | Address: | **CONTROLLERS OFFICE 500 DELAWARE AVEUNE** | | |
| Corporate Forms | | | | |
| Corporate Fees | City: | **WILMINGTON** | County: | **New Castle** |
| UCC Forms and Fees | | | | |
| Taxes | State: | **DE** | Postal Code: | **19801** |
| Expedited Services | | | | |
| Service of Process | Phone: | | | |
| Registered Agents | | | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00

Would you like ○ Status ○ Status,Tax & History Information [ Submit ]

[ Back to Entity Search ]

- GetCorporate Status
- Submitting a Request
- How to Form a New Business Entity
- Certifications, Apostiles & Authentication of Documents

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

EXHIBIT "4"



# State of California
## Secretary of State

### Statement of Information
(Foreign Corporation)
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

F

**FW89812**

# FILED

In the office of the Secretary of State
of the State of California

## MAY-21 2018

This Space for Filing Use Only

| 1. CORPORATE NAME |
|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION |

| 2. CALIFORNIA CORPORATE NUMBER | C2649647 |
|---|---|

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3.  If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.
☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed to **Item 13**.

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | | |
| 101 N PHILLIPS AVENUE, SIOUX FALLS, SD 57104 | | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | | |
| 6. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 4 | | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ | | | | |
| TIMOTHY J SLOAN | 420 MONTGOMERY STREET 12TH FL, SAN FRANCISCO, CA 94104 | | | |
| 8. SECRETARY | | | | |
| KEITH M JACKSON | 45 FREMONT STREET 27TH FL, SAN FRANCISCO, CA 94104 | | | |
| 9. CHIEF FINANCIAL OFFICER/ | | | | |
| JOHN R SHREWSBERRY | 420 MONTGOMERY STREET 12TH FL, SAN FRANCISCO, CA 94104 | | | |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 11 must be left blank.

| 10. NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE |

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 11. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | | | |

**Type of Business**

| 12. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION |
|---|
| FINANCE |

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| 05/21/2018 | KEITH M JACKSON | SECRETARY | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-350 (REV 01/2013) | APPROVED BY SECRETARY OF STATE |
|---|---|

264964†

**FILED**

in the office of the Secretary of State
of the State of California

MAY Q 4 2004

KEVIN SHELLEY, Secretary of State

## STATEMENT AND DESIGNATION
## BY FOREIGN CORPORATION

Wells Fargo Bank, National Association
<u>                                        </u>
                    (Name of Corporation)

<u>                                        </u>, a corporation organized and existing under the

laws of _____ the United States of America _____ ,makes the following statements and designation:
              (State or Place of Incorporation)

1. The address of its principal executive office is _____

   101 North Phillips Avenue, Sioux Falls, South Dakota  57104                          .

2. The address of its principal office in the State of California is _____

   464 California Street, San Francisco, California  94163                              .

### DESIGNATION OF AGENT FOR SERVICE OF PROCESS IN THE STATE OF CALIFORNIA
                    (Complete either Item 3 or Item 4.)

3. (Use this paragraph if the process agent is a natural person.)

   _____ ,a natural person residing in the State of

   California, whose complete address is _____

   _____, is designated as agent upon whom process directed to
   this corporation may be served within the State of California, in the manner provided by law.

4. (Use this paragraph if the process agent is a corporation.)

   Corporation Service Company which will do business in California as _____ , a corporation organized and existing
   CSC-Lawyers Incorporating Service

   under the laws of _____ Delaware _____ , is designated as agent upon whom process directed
   to this corporation may be served within the State of California, in the manner provided by law.

   **NOTE:  Corporate agents must have complied with California Corporations Code Section 1505
   prior to designation.**

5. It irrevocably consents to service of process directed to it upon the agent designated above, and to service
   of process on the Secretary of State of the State of California if the agent so designated or the agent's
   successor is no longer authorized to act or cannot be found at the address given.

_____                    James E. Hanson, Vice President
(Signature of Corporate Officer)                   (Typed Name and Title of Officer Signing)

Secretary of State Form
S&DC-STOCK/NONPROFIT (03/2003)



**Comptroller of the Currency**
**Administrator of National Banks**

Washington, D.C. 20219

## CERTIFICATE OF CORPORATE EXISTENCE

I, John D. Hawke, Jr., Comptroller of the Currency, do hereby certify that:

1.      The Comptroller of the Currency, pursuant to Revised Statutes 324, et seq., as amended, 12 U.S.C. 1, et seq., as amended, has possession, custody and control of all records pertaining to the chartering of all National Banking Associations.

2.      "Wells Fargo Bank, National Association," Sioux Falls, South Dakota, (Charter No. 1741) is a National Banking Association formed under the laws of the United States and is authorized thereunder to transact the business of banking on the date of this Certificate.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and caused my seal of office to be affixed to these presents at the Treasury Department in the City of Washington and District of Columbia, this April 1, 2004.



John D. Hawke, Jr.

**WELLS FARGO**

May 3, 2004

Kevin Shelley
Secretary of State
State of California
1500 11th Street
Sacramento, CA 95814

Re: *Wells Fargo Bank, National Association*

Dear Mr. Shelley:

Wells Fargo Bank, Ltd., hereby grants permission to Wells Fargo Bank, National Association, to qualify to do business in the State of California under the name "Wells Fargo Bank, National Association."

Very truly yours,

WELLS FARGO BANK, LTD.

By _Robert S Singh_

Robert S. Singley
Secretary

**EXHIBIT "5"**

# State of California
## Secretary of State ·

**S**

### Statement of Information
(Domestic Stock and Agricultural Cooperative Corporations)
FEES (Filing and Disclosure): $25.00.
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FS48914**

# FILED

In the office of the Secretary of State
of the State of California

**NOV-22 2017**

This Space for Filing Use Only

1. **CORPORATE NAME**
CLEAR RECON CORP

2. **CALIFORNIA CORPORATE NUMBER**
C3521772

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. **If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 17**.

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | 4375 JUTLAND DRIVE SUITE 200, SAN DIEGO, CA 92117 | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | 4375 JUTLAND DRIVE SUITE 200, SAN DIEGO, CA 92117 | | | |
| 6. MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ STEVEN W PITE | 4375 JUTLAND DRIVE SUITE 200, SAN DIEGO, CA 92117 | | | |
| 8. SECRETARY ARIANNA L BLACK | 4375 JUTLAND DRIVE SUITE 200, SAN DIEGO, CA 92117 | | | |
| 9. CHIEF FINANCIAL OFFICER/ JEFFREY T GARRITY | 3575 PIEDMONT ROAD N.E. SUITE 500, ATLANTA, GA 30305 | | | |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10. NAME STEVEN W PITE | 4375 JUTLAND DRIVE SUITE 200, SAN DIEGO, CA 92117 | | | |
| 11. NAME | ADDRESS | | | |
| 12. NAME | ADDRESS | | | |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14. NAME OF AGENT FOR SERVICE OF PROCESS
CT CORPORATION SYSTEM

15. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** CITY   STATE   ZIP CODE

**Type of Business**

16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION
ENTITY WILL ACT AS TRUSTEE

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 11/22/2017 | JEFFREY T GARRITY | CFO | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-200 (REV 01/2013) | Page 1 of 1 | APPROVED BY SECRETARY OF STATE |
|---|---|---|

**EXHIBIT "6"**

FRED T. WINTERS (SBN 091545)
CASPER J. RANKIN (SBN 249196)
ALDRIDGE PITE, LLP
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935
Telephone: (858) 750-7600
Facsimile: (858) 412-2609
Email: fwinters@aldridgepite.com

Attorneys for Defendant CLEAR RECON CORP

FILED/ENDORSED

OCT 18 2018

By: _____K. Spichka_____
Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SACRAMENTO

DANIEL L. HOBBS,
LISA A. MILLER-HOBBS,

Plaintiffs,

v.

WELLS FARGO BANK, N.A., CLEAR
RECON CORP, BSI FINANCIAL
SERVICES, WILMINGTON SAVINGS
FUND SOCIETY DBA CHRISTIANA
TRUST, AS TRUSTEE OF THE
BROUGHAM FUND 1 TRUST, and DOES 1
THROUGH 25 INCLUSIVE,

Defendants.

Case No. 34-2018-00239683

**DEFENDANT CLEAR RECON CORP'S
DECLARATION OF NON-MONETARY
STATUS**

[Civil Code § 2924*l*]

Complaint Filed:    August 28, 2018
Trial Date:            NONE SET

BY FAX

Defendant CLEAR RECON CORP ("Clear Recon") hereby responds to Plaintiffs

DANIEL L. HOBBS, LISA A. MILLER-HOBBS's ("Plaintiffs") Complaint and files this

Declaration of Non-Monetary Status pursuant to California Civil Code section 2924*l*, and states

as follows:

1.    Clear Recon is the duly authorized Trustee or Substitute Trustee under the Deed

of Trust recorded on January 7, 2005 as Instrument No. of the Official Records in the office of

County Recorder in Sacramento County, California which is the subject of this action.

2.    Clear Recon knows or maintains a reasonable belief that it has been named in this

action solely in its capacity as Trustee under said Deed of Trust, and not arising out of any

1

1  wrongful acts or omissions on its part in the performance of its duties as trustee.

2         3.      Clear Recon maintains a reasonable belief that it has not been named as a

3  Defendant in the instant action due to actual acts or omissions on its part in connection with the

4  performance of duties as Trustee under the Deed of Trust as Clear Recon has complied at all

5  times with state law in regard to its duties as Trustee and Clear Recon has not been involved in

6  any way with the property that is the subject of this lawsuit, except in its capacity as the Trustee

7  under the Deed of Trust which encumbers the property.

8         4.      Clear Recon, as the Trustee in this matter, is exempt from the California

9  Rosenthal Act pursuant to Civil Code section 2924(b).

10        5.      Clear Recon hereby agrees to be bound by whatever Order or Judgment issued by

11 the Court regarding said Deed of Trust and shall not be subject to any monetary awards for

12 damages, attorney fees or costs pursuant to Civil Code section 2924*l*(d).

13        6.      The filing of this declaration of Clear Recon is not intended to and does not

14 prejudice the rights of any trustor, beneficiary, or assignee under said deed of trust, and shall not

15 constitute a waiver of any other person or entity's rights or obligations under said deed of trust.

16        I declare under penalty of perjury under the laws of the State of California that the

17 foregoing is true and correct.

18 Executed this 17th day of October 2018, at San Diego, California.

19

20                                              Tammy Laird
                                                CLEAR RECON CORP
21

22

23

24

25

26

27

28                                              2

DEFENDANT CLEAR RECON CORP'S DECLARATION OF NON-MONETARY STATUS

1  HOBBS VS. WELLS FARGO BANK, N.A., ET AL
   Superior Court of California County of Sacramento
2  Case No(s). 34-2018-00239683

3  <u>**DECLARATION OF SERVICE**</u>

4       I, the undersigned, declare:  I am, and was at the time of service of the papers herein
   referred to, over the age of 18 years, and not a party to this action.  My business address is 4375
5  Jutland Drive, Suite 200, P.O. Box 17935, San Diego, CA 92177-0935.

6       On October 17, 2018, I served the following document(s):

7       -DEFENDANT CLEAR RECON CORP'S DECLARATION OF NON-MONETARY
   STATUS
8
   on the parties in this action addressed as follows:
9
   DANIEL L. HOBBS
10 LISA A. MILLER-HOBBS
   2206 STOCKMAN CIRCLE
11 FOLSOM, CA 95630
   (PRO PER)
12
   Joshua R. Hernandez
13 Wright, Finlay & Zak:
   4665 MacArthur Court, Suite 200
14 Newport Beach, CA 92660
   (Attorneys for Wilmingotn and BSI Financial)
15

16 __X__  **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above.  I am
        readily familiar with the firm's practice of collection and processing correspondence for
17      mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary
        course of business.  I am aware that on motion of party served, service is presumed
18      invalid if postal cancellation date or postage meter date is more than one day after date of
        deposit for mailing in affidavit.
19
        _____  **BY CERTIFIED MAIL:** I placed a true copy in a sealed envelope addressed as
20      indicated above via certified mail, return receipt requested.

21      _____  **BY FEDERAL EXPRESS:** I placed a true copy in a sealed Federal Express envelope
        addressed as indicated above.  I am familiar with the firm's practice of collection and
22      processing correspondence for Federal Express delivery and that the documents served
        are deposited with Federal Express this date for overnight delivery.
23
        I declare under penalty of perjury under the laws of the State of California that the
24 foregoing is true and correct

25      Executed this __17th__ day of October, 2018, at San Diego, California.

26

27                                                  _Amber Baldw___

28                                          AMBER R. BALDWIN

                                    - 1 -
                            DECLARATION OF SERVICE



**EXHIBIT "7"**

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

Sacramento County Recording
Mark Norris, Clerk/Recorder
BOOK **20050107** PAGE **1219**
Friday, JAN 07, 2005  12:39:09 PM
Ttl Pd   $57.00   Nbr-0003305326
SLT/22/1-17

WHEN RECORDED MAIL TO:
WORLD SAVINGS
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER:   0027683424

NOTE AMOUNT:   $375,000.00

Alliance Title 12301761-814-KBM          FOR RECORDER'S USE ONLY

### DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST), AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS   $468,750.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.   DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
     (A)   Security Instrument. This Deed of Trust, which is dated  JANUARY 03, 2005 *
" * " will be called the "Security Instrument."

     (B)   Borrower. DANIEL L. HOBBS AND LISA A. MILLER-HOBBS, HUSBAND AND WIFE

sometimes will be called "Borrower" and sometimes simply "I" or "me."

     (C)   Lender. WORLD SAVINGS BANK, FSB, " " " " " " " " " " " " "
" * " * " " " * " " " " " " * " " " * " " " " " ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is  A FEDERAL SAVINGS BANK " * " * "
" * " * " *  which is organized and exists under the laws of the United States. Lender's address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612.

SD001A (03.22.02/4-02) A01A              Page 1                CA
DEFERRED INTEREST            DEED OF TRUST-ADJUSTABLE

0027683424

(D)   Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $375,000.00 * * ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in monthly payments and to pay the debt in full by JANUARY 15, 2035.

(E)   Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F)   Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G)   Person. Any person, organization, governmental authority or other party will be called "Person."

(H)   Trustor, Beneficiary, Trustee. Borrower is the "Trustor," Lender is the "Beneficiary" and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION * * * * * * * is the "Trustee.

II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY
       I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

       (i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

       (ii)  pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

       (iii) keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.   DESCRIPTION OF THE PROPERTY
       I give Trustee rights in the Property described below:

       (i)   The property which is located at 2206 STOCKMAN CIRCLE, FOLSOM, CA 95630. * * * * * * * * * * * * * * * * * * * .* * * * * * The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

       (ii)  All buildings and other improvements that are located on the Described Property;

0027683424

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

**IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**COVENANTS**

I promise and I agree with Lender as follows:

**1.   BORROWER'S PROMISE TO PAY**
I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.   PAYMENTS FOR TAXES AND INSURANCE**
**(A)   Borrower's Obligations**
I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

0027683424

**(B)    Escrow Accounts**

        Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

        The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

        If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

        Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

0027883424

### 3.   APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

### 4.   BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5.   BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered

0027683424

by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

0027683424

6.   BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7.   LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.   LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.   AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if

0027683424

only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10.     CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**
**(A)     Borrower's Obligations**
Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)     Lender's Rights**
Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

**11.     OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**
Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made

0027683424

in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

### 12.    MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

### 13.    LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 2206 STOCKMAN CIRCLE, FOLSOM, CA 95630. * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15.    GOVERNING LAW; SEVERABILITY

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16.    BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the

0027683424

tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

0027683424

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that

**(A)**    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

**(B)**    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the monthly payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

0027683424

**25.  FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**26.  AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)  Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)  Lender approves the creditworthiness of the transferee in writing;

(iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)  an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)  the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.  SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

0027683424

**28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.    RECONVEYANCE**

Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.    STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

`0027683424`

31.    ( X )  QUICK QUALIFYING LOAN PROGRAM

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

32.    ( X )  OWNER OCCUPANCY

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that   (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

### ( X )  VALUE INDICATES THAT THE PARAGRAPH APPLIES.

### THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

0027683424

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

BORROWER(S):

_Daniel L Hobbs_ _____ (Seal)
DANIEL L. HOBBS

_Lisa A. Miller-Hobbs_ _____ (Seal)
LISA A. MILLER-HOBBS

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

State of _California_

County of _Sacramento_

On _Jan 3, 2005_ before me, _Ernesto Andres Marlan_
Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Daniel L. Hobbs and Lisa A. Miller - Hobbs_
Name(s) of Signer(s)

☐ personally known to me -OR- ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> ERNESTO ANDRES MARLAN
> COMM. #1508485
> Notary Public-California
> SACRAMENTO COUNTY
> My Comm. Exp. Aug 17, 2008

WITNESS my hand and official seal.

Signature of Notary Public

---------------------OPTIONAL---------------------

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____

☐ Individual
☐ Corporate Officer
☐ Titles(s): _____
☐ Partner - ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

> RIGHT THUMBPRINT
> OF SIGNER
> Top of Thumb here

Signer's Name: _____

☐ Individual
☐ Corporate Officer
☐ Titles(s): _____
☐ Partner - ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

> RIGHT THUMBPRINT
> OF SIGNER
> Top of Thumb here

Page No. 6
File No. 12301761-814- KB1

## SCHEDULE C
## LEGAL DESCRIPTION

All that certain real property situate in the City of Folsom, County of Sacramento, State of California, described as follows:

Lot 7, as shown on the Empire Ranch – Village No. 38, PN 99-643-10, filed for record January 10, 2003, in Book 309 of Maps, at Page 9, Sacramento County Records.

APN No:   072-2250-007-0000

**EXHIBIT "8"**

Sacramento County Assessor Home Page (http://www.assessor.saccounty.net) >

# Assessed Value Look-Up

Parcel Number:    072  -  2250  -  007  -  0000

Search

|  | This Year's Prop13 Assessment | This Year's Assessment |
|---|---|---|
| Land + Improvements: | $ 444,110 | $ 444,110 |
| Personal Property: | 0 | 0 |
| Fixtures: | 0 | 0 |
| Exemptions: | 0 | -7,000 |
| Total Assessed Value: | $ 444,110 | $ 437,110 |

Information was last updated on: 09/28/2018

"This Year's Prop 13 Assessment" shows the property's factored Prop 13 value.

"This Year's Assessment" displays the assessed values that will appear on the tax bill.

If the two columns do not match, the property is in a temporary reduced status known as
Prop 8 Decline In Value.
(http://www.assessor.saccounty.net/DeclineInValue/Pages/DeclineInMarketValue_Pr

(Reference CA Rev. & Tax. Code 619 & 621; Sacramento Co. Res. 2013-217)

Assessment Appeal ($30 filing fee)

Filing period is July 2 through November 30*. Contact the Assessment Appeals Board at 700 H Street, Room 2450; Sacramento, CA 95814, call (916) 874-8174, or visit the
 Appeals Board web site.
 (http://www.sccob.saccounty.net/Pages/AssessmentAppeals.aspx)

*If the final filing date falls on a weekend, mail postmarked the next business day shall be deemed on time.

Revenue & Taxation Code Section 1607 provides that, if upon review of the application, the Assessor, the county legal officer and the applicant agree to a reduction in value, then a written stipulation signed by those parties may be filed with the Assessment Appeals Board. In such cases, the applicant is not required to attend the scheduled hearing or to testify to the property's value. At that stipulation hearing, the Assessment Appeals Board may either accept the stipulation and the matter is closed, or they may reject it and schedule a new hearing which the applicant will be required to attend.

Property owners must still pay any property tax bills timely to avoid penalties, pending outcome of the appeal.

Assessed Value Lookup Home Page
(http://www.assessor.saccounty.net/DeclineInValue/Pages/Prop8Viewer.aspx)

Sacramento County Assessor Home Page (http://www.assessor.saccounty.net)